v. VIRGIN Islands Water and Power Authority. Mr. Wolf. Good morning, Your Honors. My name is John Wolf. I represent Letitia Wilson, a young woman who WAPA admits that it fired because she was pregnant. And when you look at the record of this case, what you see is a pattern of inconsistent explanations for that termination, representations about the nature of the program and conditions of her employment that just don't seem to ring true in light of the testimony and in light of the employment handbook that governed all employees for WAPA at that time. And yet, the District Court granted summary judgment on all these claims, notwithstanding the fact that WAPA admitted that it was, or that the plaintiff was entitled to, or the appellant was entitled to FMLA leave. All these issues should have gone to the jury. There are four issues, actually, primary issues, that I'd like to walk the Court through step-by-step, if I could. The first is the FMLA claims that the plaintiff has. What are the facts that you have that you would have liked to have gone to a jury that you say there are genuine disputes as on the FMLA issue? Because the question is, did she show that she was terminated as a result of having taken the leave? A lot of the factual issues relate to the nature of the student program that she was allegedly a part of. She was actually a Clerk III, but WAPA used various terms for this job—temporary dispatcher, student dispatcher, various terms. But when it all comes down to it, they had one job description they could produce, and it was the job description of when she was terminated, and almost immediately after having given notice that she was pregnant. This was in March of 2005. Was she required to be a student at the University of the Virgin Islands? As far as we can tell, Your Honor, that was all that was required, was that she had to be a student, not that she had to be a full-time student. There was testimony that— But she wasn't going to be a student at all in the fall semester, was she? Full-time, part-time, any time? Well, with the pregnancy and the complications related to that, that was true, but she had requested time off because as she had gotten—well, she had become pregnant, but she also had complications related to that pregnancy. And a lot of the factual issues not only relate to the nature of the program she was in, but also whether or not—particularly whether or not she had, in fact, done everything she was supposed to do to let her employer know what her status was. But at this point, you're arguing the Family Medical Leave Act claim, right? You started to argue that. I did, I did. Well, I'm sorry, I was trying to address some of the factual issues. Okay, all right. Continue then. Would you like me to go back to the Family Medical Leave Act? No, continue as you were. Well, in addition to the nature of the program was at issue, but a large part of the facts that I think were ignored by the District Court were the fact that Ms. Wilson had done everything she was supposed to do, as far as she knew, with respect to her enrollment in classes at the UVI. She had proved to WAPA that she had been enrolled in the fall and Could she enroll then in the fall of 2005? We're talking about the fall of 2006? I'm sorry, 2006. I mean, wasn't she prevented by medical reasons, for medical reasons, from enrolling that fall? Yes, but there's no reason that she couldn't have—I mean, essentially, she could have enrolled for those courses. I mean, we have testimony from WAPA that essentially says that, well, would it be possible if the student were to start a semester and have trouble for some reason, if they were registered for a certain number of hours and they had to drop a class, or maybe they failed a class, would that be okay? Could you still maintain your full-time status if you dropped a class? And the answer was yes. So, you know, it seems certainly plausible that Ms. Wilson could have taken time off as she was allowed under FMLA for her pregnancy to come back to work to have registered for those classes. And all WAPA had to do, and it was their obligation to do this under the FMLA, was to help her and to tell her what she needed to do to maintain her student status so that she wouldn't lose her job. But they didn't do that. Now, WAPA's— Here's what I don't understand. For your FMLA claim, you have to show that she was terminated as a result of taking the leave. Her last day of work varies depending on what you read, July 23rd, July 24th, one of those dates. She's terminated as of a date in September, right? Mm-hmm. So, my question is, what are the facts that we have before us to show that she was terminated as a result of taking the leave? Well, she was actually on medical leave, and about the time that that leave was supposed to have run up, which actually is incidentally her due date and her return to work date, that she was set to return to work, according to WAPA, she was terminated then. And that was in September, but that's not our position. I mean, it's pretty clear that she was terminated in July, and immediately after—it's the recent see-in time—immediately after she, within a couple of months there of letting her know that she was pregnant, they started recruiting to fill her position. They were recruiting flyers. They were trying to fill her position, and then—I'm sorry. Well, let me ask you this question. All right. So, her last day of work is July 23rd. Let's assume for a moment, August, September, October. Let's assume for a moment her termination was in November, right? Following the—okay. November of 2005. So, it's clearly more than 12 weeks later. That's my only conclusion, right? So, if her termination is in November of 2005, is there an FMLA violation? Well, I mean, Your Honor, that's not what we have here. We—I mean, the—there's an FMLA violation here because they didn't notify her that she could take that leave at that time, and they didn't allow her to do so. As a matter of fact, when she was at her medical leave, when she returned, she was terminated. The issue that the district court found was that there was no harm from this, and clearly there was harm because she lost her job. She was not reinstated. She lost pay and benefits. But their conclusion that there was no harm was based on the fact that because she didn't go back to school, she wasn't entitled to a job under the WAPA program in connection with the University of Virginia. But under WAPA's employee manual, she had been there over a year. She became a permanent employee. That manual applies to all employees. She had an expectation that she would be able to return to work, and she had an expectation, certainly under the FMLA, that her employer would notify her of what she needed to do to keep her job, and if that meant registering for classes that she then had to drop because she was pregnant and then came back and did a full load or maxed out the next semester, she could still fulfill her obligations. And that was the issues were—the factual issues were with WAPA, where they were unable to provide a consistent explanation for what this program entailed, what the requirements were, and they certainly didn't communicate those to Ms. Wilson. As a matter of fact, they were not able to produce a written copy of any details of this program. Do you want to talk a second about private right of action? Absolutely, Your Honor. Please. We believe that the Virgin Islands should recognize a private right of action for sex discrimination. As it stands now until recently, there was a split among the circuits, and with the Cannoneer case, essentially recognized, they carved out a private right of action in the case of sexual harassment. But here we've got discrimination because of pregnancy, and we'd argue that the court should interpret this statute. Now, we haven't raised this—we haven't raised a constitutional challenge to these statutes, but we would urge that the court act in the spirit of Virgin Islands law, and that spirit being that discrimination should not be allowed based on sex, including one's right to pregnancy and to give birth and so forth. Well, you're arguing that Alexander v. Sandoval doesn't apply to the Virgin Islands Well, I'm arguing that the trend, at least as of, you know, 2011, I mean, we seem to be moving and should be moving in a direction that is consistent and doesn't carve out an individualist classification within women. Why would we want to discriminate against women who—well, distinguish between or allow discrimination against women who have become those who have been harassed? And I don't think that was ever the intent of the legislature. And we would ask that the court delve into this and look at the intent of the legislature, which is going to be the key, I think, to this decision. All right. Okay, Mr. Wolfe, we'll have you back on rebuttal. Ms. Cintron? May it please the Court, Your Honor? My name is Gina Cintron. I'm here on behalf of the WAPA's here today to respectfully ask this Court affirm the District Court's decisions below. Ms. Cintron, I know you're soft-spoken, but try to speak up as much as you can so we can hear you. I'm sorry, Your Honor. Okay. With regards to the District Court affirming WAPA's motion for summary judgment on Wilson's defamation claim, WAPA properly demonstrated that there was a lack of evidence to support her claim in that she failed to show that WAPA made any false statements. The challenge statement is the statement that Wilson failed to maintain full-time student status at the University of the Virgin Islands. The record is clear that Wilson was advised of this requirement in her interview. Ms. Hanley testified to that in her deposition. So did Ms. Jean Sargent-Williams. Also, Ms. Wilson was reminded of this requirement on three separate occasions by Mr. Bowman when he would send letters out reminding them they had to be full-time and to please submit evidence of their enrollment. I'm going to- Sure. Defamation, I think, is less interesting than the other issues. I know, Your Honor. I'm sorry. No, it's always start with your strong suit. I just wanted to establish that it was true that she had to maintain full-time student status. So I was referring to the record as far as the evidence showing that she was, in fact, told and she knew about it. As I said, Mr. Bowman gave her a letter in November 4, 2004, which precedes any date that she allegedly told WAPA that she was pregnant. Also, again, on June 13th and on July 8th. And while in Wilson's reply, she stated that the November 4th letter wasn't any part of the summary judgment record, that statement is incorrect in that WAPA had referred to that in its reply to Wilson's counterstatement of fact number 10. Also, Wilson testified at her deposition to having received all of these letters. Wilson also advised the Department of Labor on August 26, 2005, that she had to maintain full-time student status as a condition for employment. So the record is clear that Wilson knew that she had to maintain full-time student status at the University of the Virgin Islands. I have a question here on the Family Medical Leave Act issue. It appears from the record that your client began recruiting and looking for replacements for Wilson as early as July of the year in question. Yes, Your Honor. I'm aware of the flyer that went out. And while the testimony elicited from the WAPA personnel couldn't testify exactly why that was being solicited, I can say that it was a temporary position. So the fact that we were recruiting employees for a position that was temporary is the explanation that WAPA has. But it was a temporary position that she had held for some time. It was initially... well, it's supposed to be a two-year... Let me just stop you. And at that time, the only thing that had really changed was she had taken family and medical leave because of her pregnancy. And it certainly looks like at least it is a question of fact as to why they actually let her go, even though they didn't let her go until late September. But the question becomes, you know, what was the factor? Was it family and medical leave or was it her lack of full-time status? Because in July, they didn't know that she wasn't going to be a student. No, they didn't know. But isn't that evidence somewhat bothersome? Well, yes, they couldn't explain on the record why that posting was out for a deadline application date of May 31st. All I can say is that, you know, they post because these positions are temporary to fill whatever vacancies may come forward in the future. Okay. All right. Now, with regards to the district court's affirming WAPA's motion for summary judgment on the FMLA claim, the district court did properly decide that because Wilson has failed to show that she was prejudiced by any failure of WAPA to advise her of her rights under the FMLA. FMLA is unpaid leave. So during any time that Wilson would have been protected by FMLA leave, she would have earned $0 in compensation since it's unpaid. And also, she would not have earned any benefits since her position didn't give her benefits and also because employees own accrued leave on FMLA leave. Also, while She had no right to have her job upon return from leave? No, Your Honor. Since Ms. Wilson was on notice that she had to maintain full-time student status, she knew she had to maintain full-time student status. She was submitted her grade reports. So that was the requirement of the program. You have to maintain full-time student status. Ms. Wilson failed to enroll in school. Did WAPA inform her that she needed to enroll for the full term of 2006? Well, I believe Ms. Wilson was fully aware of that given her admissions to the Department of Labor, given WAPA's constant reminders to her, given that she was told this in her interview that she had to maintain full-time student status of this. So your point is the argument that the failure to inform her at that time, number one, is factually wrong, but number two, doesn't create a violation of the FMLA? WAPA's failure to advise her that she wasn't entitled to FMLA? That she had to enroll. Isn't that what you meant? Yeah. Oh, I don't believe so, Your Honor. The FMLA only advises that she was, that, you know, her rights under the FMLA should advise her of a condition of employment requirement, which is to maintain full-time student status. Do you think that the district court was in error when it ruled that there was no private right of action applying federal jurisprudence? No, Your Honor. I do not. I believe that the test under the Sandoval case where you look at the statute and you see whether or not there's private right and remedy, if it has that kind of language, it would seem to dictate that the legislature did not intend to create a private right of action when it focuses on the entity to be regulated rather than the person to be protected, and then the existence of that fully remedial scheme to address any discrimination claims tend to show the intent that no private right of action was intended. Why should we apply Sandoval, Alexander v. Sandoval, which implied, which created the standards for implying private rights of actions in federal statutes? Why should we apply that to these two Virgin Islands statutes? Again, it was also applied in the Winooski case also. I believe that was a Third Circuit case. It's statutory construction. I don't believe that it matters what kind of statute it is. The test should remain the same. If a statute focuses on the entity regulated rather than the person protected, the intent should be found that there is no private right in that statute. Do you have anything else? No, Your Honor. Thank you. All right. Well, if not, we thank you. We'll call back Mr. Wolfe for rebuttal. Is there anything else that you wanted to add, Mr. Wolfe? Yes, Your Honor. A few factual issues I wanted to clarify for the Court. Before we fall into this assumption that she was terminated in September upon return, the Court needs to clarify that well before September, my client was requesting a copy of her personnel file. She was also applying for and beginning to work out to receive unemployment benefits. Now, why would you do that in August if you were terminated in September? Again, you have to rewind. It was actually May when they started to advertise for her position, two months after she notified them that she was pregnant, and it was actually July 24th when she notified them that she was going to be out for medical leave that WAPA has as her, quote-unquote, effective termination date. Can't that be construed to be merely routine? I mean, doesn't an agency have a right to at least advertise and find out who's interested and available in the event that there is a vacancy? But I think in the context, and the record shows that there were derogatory comments made about these women being pregnant, and again, in light of the other facts that you see with her applying for unemployment benefits in August, there are certainly some factual issues that complicate this matter such that this should have never gone out on a summary judgment. Also, I wanted to add, as far as the FLA is concerned, the FMLA requires that the employer honor any benefits programs that it actually has in place, and there were sick leave benefits as part of WAPA's employment manual that WAPA has testified that applied to all employees, so they should have honored those. Did her compensation end as of July 23rd or 24th? I believe that's correct. Your Honor, as I stand here now, I can't be positive about that. I would have to go back and check, but I think that's correct. Is there anything else, Mr. Wolf? Your Honor, in looking at the agreement, the employment manual that we have argued is part of the contractual agreement between WAPA and Ms. Wilson, it's clear that, and this is a reference to Joint Appendix 883, she was no longer, as WAPA presented, a temporary employee. After a year, this is Part C of that page, of that agreement, she actually became a permanent employee, which meant that she was required under that agreement to certain notice requirements and so forth. Did Ms. Wilson ever see the employment manual? I don't believe that she ever saw it. That's my understanding. But there is testimony that— So what's the basis for saying that it's a contract between her and WAPA? Well, even if, I mean, Your Honor, even if the district court was right and there was no contract, I did want to add that there were certainly, there's still an implied duty of good faith and fair dealing here because even in the Virgin Islands, even in an at-will situation, which WAPA has characterized this as, she would still be entitled to a duty of good faith and fair dealing. And the fact that WAPA has tried now to maintain that she did not maintain her full-time status and was sending out letters to her telling her that she better get her information in when, in fact, it was already in the files is suggestive, as well as the way they presented the timeline here is highly suggestive that they backed it in bad faith. Do you have any position on whether or not the private right of action issue should be Your Honor, I mean, today I don't have a position for that. I mean, obviously if there's a— Does the Virgin Islands Supreme Court accept certification of territorial law issues from the federal courts? From the federal courts? Yes. Your Honor, I'm not sure about that. I just, I'm sorry, I wouldn't— That may be a question to which none of us know the answer. Yeah. Is there anything else? No, Your Honor. Okay. Well, we thank counsel, we thank counsel for their argument, and we will take this matter under advisement. We'll take a five-minute recess. You're absolutely accurate, and your statement refreshes my memory on that point. Thank you, sir. We did some research during the interim and ascertained that Rule 38 existed. Thank you.